UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  12 - 16 - 15
```

-------------------------------------------------------------X
                                         :

TATSHA ROBERTSON,
                                         :

              *Plaintiff*,         :      14 Civ. 6759 (PAC)
                                         :

   *-against-*                      :

                                         :      **OPINION & ORDER**

PEOPLE MAGAZINE et al.
                                         :

             *Defendants*.        :

-------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiff Tatsha Robertson, a former senior editor at People Magazine ("People"), brings

claims against Defendants People, Time Inc. and Betsy Gleick, her superior at People, for

unlawful race discrimination and harassment in violation of 42 U.S.C. § 1981, Title VII, and the

New York City Human Rights Law. Plaintiff alleges that she was subjected to a discriminatory

work environment and ultimately terminated due to her race.

    Plaintiff moves now to compel discovery of documents concerning People's editorial

discussions and decisions on articles to be published (or not published). Defendants object. The

Court holds that the discovery requests are burdensome, disproportionate to the needs of the

case, and irrelevant to Plaintiff's claims. Even if the requests were relevant, Plaintiff has failed

to overcome the qualified reporter's privilege. The motion to compel is DENIED.

## BACKGROUND

    As alleged, Plaintiff worked at Time Inc. publications for eight years until her

termination in 2014 due to a purported workforce restructuring. Amended Compl., Dkt. 31 ¶¶ 2,

91. From 2006 to 2009, she worked as a news editor at Essence Magazine, where she received

numerous awards, conducted high-profile interviews, and received positive performance reviews.[1] *Id.* ¶¶ 12-23. Based on her success at Essence, People recruited Plaintiff and she accepted a position as a senior editor in 2009. *Id.* ¶¶ 24-26. Plaintiff was the only black editor at People, and she alleges that she was discriminated against by Betsy Gleick, who is white and apparently was Plaintiff's superior. Plaintiff alleges that Gleick gave her a negative performance evaluation and told Plaintiff: "You need to talk like everyone else here. You're not at Essence anymore." *Id.* ¶ 31. Plaintiff alleges that that remark had racial undertones, and meant that Plaintiff was "somehow not 'White enough.'" *Id.* ¶ 32.

Plaintiff alleges that Gleick hindered her ability to succeed at People by cancelling or skipping meetings at which Plaintiff was scheduled to pitch article ideas, intentionally excluding Plaintiff from important emails, assigning to white editors stories within Plaintiff's area of the magazine, and insisting that "the only types of stories she and People Magazine were interested in printing were those concerning: 'White middle-class suburbia.'" *Id.* ¶¶ 34-43. Further, Plaintiff alleges that Gleick made racially offensive comments, often in the context of stories pitched by Plaintiff about African-Americans. *Id.* ¶¶ 44-56. In May 2014, Plaintiff was terminated as part of a larger restructuring. *Id.* ¶ 91. Plaintiff alleges that she was terminated due to her race, as she was the only senior editor and only direct report of Gleick who was terminated, and she was replaced by a less qualified white employee. *Id.* ¶¶ 94-95.

On October 30, 2014, Plaintiff served her First Request for Production of Documents, containing 135 document requests. *See* Decl. of Michael J. Willemin, Dkt. 23 Ex. C. Defendants generally object to the document requests on grounds of relevance, burden and

---

[1] Essence describes itself as "the premiere lifestyle, fashion and beauty magazine for African-American women." About Essence Communications Inc., www.essence.com/about (last visited Dec. 14, 2015).

editorial privilege. *See id.* Ex. D at 3. Defendants specifically object to 36 document requests on the grounds that they concern "editorial decisions," are "burdensome," and are "designed to harass." *See* Def. Mem., Dkt. 26, at 4.

## DISCUSSION

Federal Rule of Civil Procedure 26 governs the scope and limits of discovery. Prior to the adoption of recent amendments, Rule 26(b)(1) permitted "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," including any discovery "reasonably calculated to lead to the discovery of admissible evidence." But discovery was limited where "the burden or expense of the proposed discovery outweighs its likely benefit," Fed. R. Civ. P. 26(b)(2)(C)(iii), and by the background principle that the Rules be construed to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

On December 1, 2015, Rule 26(b)(1) was amended to require that discovery be "proportional to the needs of the case." While the amendment codified a proportionality requirement, courts in this Circuit have long had discretion to limit discovery requests that are disproportionate to the needs of the case, dating at least as far back as the 1983 amendments to Rule 26. *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) ("Of course, as in all matters relating to discovery, the district court has broad discretion to limit discovery in a prudential and proportionate way."); *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316 (S.D.N.Y. 2003) (discussing the "proportionality test" embodied in Rule 26(b)(2)); Advisory Comm. Notes to 1983 Amendment (explaining that the amendment is intended to "address the problem of discovery that is disproportionate to the individual lawsuit"). As such, the 2015 amendment does not create a new standard; rather it serves to exhort judges to exercise their

3

preexisting control over discovery more exactly. *See* Advisory Comm. to 2015 Amendment (explaining that the "present amendment *restores* the proportionality factors to their original place in defining the scope of discovery" (emphasis added) and stressing the "need for continuing and close judicial involvement" in ensuring proportionality).

The Court has no trouble concluding that Plaintiff's discovery requests are burdensome and disproportionate. Unlike most discrimination cases where discovery is addressed to allegedly discriminatory conduct and/or comments, Plaintiff here seeks nearly unlimited access to People's editorial files, including all documents covering the mental process of People staff concerning what would or would not be published in the magazine. To provide a few examples, Plaintiff requests all documents "concerning any of People Magazine's regular meetings," all documents "concerning any meeting at which discussions concerning which content would appear in People Magazine occurred," all documents "concerning the decision-making process with regard to choosing who would be put on the cover of People Magazine," and copies of all of People's covers and published stories dating back to 2005. Decl. of Michael J. Willemin, Dkt. 23 Ex. C at ¶¶ 51, 52, 61, 86, 79, 80. Those requests (and others) extend far beyond the scope of Plaintiff's claims and would significantly burden Defendants. In addition, what Defendants decided to publish (or not publish) and its editorial decisions (as opposed to its business decisions in personnel hiring, firing, promoting, or demoting) are not relevant to Plaintiff's claims. *See Fenner v. News Corp.*, No. 09 cv 9832 (LGS), 2013 WL 6244156, at \*16 (S.D.N.Y. Dec. 2, 2013) (rejecting employment discrimination claims by former New York Post employees based on the Post's "editorial decisions about the types of stories it sought to publish").

Even if documents concerning Defendants' editorial discussions and decisions were relevant, these documents would be protected by a qualified editorial privilege that Plaintiff has

4

not overcome. A qualified reporter's privilege is recognized under the First Amendment, federal common law, and the New York Shield Law, codified at New York Civil Rights Law § 79-h. *See Schoolcraft v. City of New York*, No. 10 cv 6005 (RWS), 2014 WL 1621480, at \*2-3 (S.D.N.Y. Apr. 22, 2014). "The privilege, which exists to support the press's important public service function to seek and reveal truthful information, protects newsgathering efforts from the burdensome wholesale production of press files that risk impeding the press in performing its duties." *Id.* at 2. Disclosure of nonconfidential editorial documents requires a showing that the materials at issue "are of likely relevance to a significant issue in the case" and "are not reasonably obtainable from other available sources." *Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29, 36 (2d Cir. 1999). Disclosure of confidential editorial documents requires a "clear and specific showing" that the materials at issue are "highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources." *In re Petroleum Prod. Antitrust Litig.*, 680 F.2d 5, 7 (2d Cir. 1982).

Plaintiff has not even attempted to demonstrate compliance with the privilege standards. Indeed, the document requests seek precisely the "burdensome wholesale production of press files" that the privilege is intended to guard against. *Schoolcraft*, 2014 WL 1621480, at \*2; *see also Gonzales*, 194 F.3d at 35 (explaining that the privilege serves to prevent litigants from "sift[ing] through press files in search of information supporting their claims"). Since Plaintiff's document requests are overbroad, disproportionate, burdensome and privileged, the motion to compel is denied. The denial is without prejudice, and does not bar Plaintiff from seeking a more narrowly tailored set of documents, provided such requests comply with the Federal Rules of Civil Procedure and the reporter's privilege.

5

## **CONCLUSION**

Plaintiff's motion to compel discovery is DENIED.  The Clerk is directed to terminate

the motion at Docket 21.


Dated: New York, New York                    SO ORDERED
      December [ 16 ], 2015

                                        PAUL A. CROTTY
                                        United States District Judge